## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Case No. 23-cr-202-7 (BAH)** |
| | : | |
| JOVAN WILLIAMS, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. On September 5, 2024, Defendant Jovan Williams pleaded guilty, pursuant to a Rule 11(c)(1)(C) plea agreement, to Counts 1 and 51 of the Superseding Indictment, charging him with Conspiracy to Distribute and Possess with Intent to Distribute 100 Kilograms or More of a Mixture or Substance Containing a Detectable Amount of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii), and 846; and Carjacking while Armed and Aiding and Abetting, in violation of 22 D.C. Code §§ 2803, 4502 and 1805. The Court accepted the Defendant's guilty plea and the parties' plea agreement, including the agreed sentencing range, 15 to 20 years.

The Defendant regularly possessed firearms, including automatic weapons and ghost guns, over the course of his participation in the Kennedy Street Crew's drug trafficking operation. More shockingly, however, the Defendant perpetrated a shooting during homecoming weekend at Morgan State University, as well as an armed robbery and carjacking spree within the District— all while knowing he was a wanted fugitive for the charges against him in the instant case. The brazenness of the Defendant's post-indictment conduct is alarming and merits a sentence at the top of the parties' agreed sentencing range, 20 years' incarceration.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

A.      **KDY and Defendant's Role Within KDY Generally**

The Defendant's guilty plea stems from an investigation into the Kennedy Street Crew, also known as "KDY," which operates primarily in Northwest, Washington, D.C. Through multiple years of investigation into the KDY crew—of which the Defendant is a member—law enforcement learned that KDY is among the largest crews in Washington, D.C. based on both territory and its vast membership. Within KDY-controlled territory, law enforcement further identified several commercial businesses, public recreation centers, residences, and day-care facilities that are surrounded by prolific "open air" drug trafficking markets and incidents of violent crime, to include shootings and homicides.

Many of KDY's members are involved in a drug trafficking conspiracy (involving fentanyl, oxycodone, marijuana, cocaine and cocaine base, amongst other narcotics), money laundering, the unlawful possession of firearms (including machineguns), and in some instances, shooting at rival crew members to maintain and control KDY's territory and reputation.

A direct consequence of the KDY Crew's drug trafficking operation, in conjunction with its expansion and protection of crew-controlled territory, is a marked rise in crimes of violence and homicides in the Kennedy Street Neighborhood. Over the duration of the charged conspiracy, from June 2019 to June 2023, the following crimes of violence have occurred in the Kennedy Street Neighborhood: five homicides, resulting in the deaths of seven and the wounding of six additional individuals; one assault with the intent to kill, which resulted in the wounding of three individuals; and 19 assaults with a deadly weapon, which have produced approximately two dozen adult victims. In addition to the seven dead and approximately three-dozen additional victims, seven juveniles have also been victims of the above-listed crimes of violence. Beyond these

incidents, during the same time period, there have been approximately 70 additional reports of unlawful discharges in the Kennedy Street Neighborhood during the same time period. Notably, these statistics only account for crimes of violence and firearms-related incidents in one neighborhood during the time period alleged in the indictment and superseding indictment; it is difficult to estimate with any degree of precision the number of retaliatory and/or crew-related shootings involving KDY in and around the District of Columbia. Put simply, the KDY Crew is a driver of the cycle of violence associated with drug trafficking and firearms that has plagued the Kennedy Street Neighborhood and other areas of D.C. for years.

For his part, the Defendant was among the KDY crew members who possessed and sold bulk quantities of marijuana and possessed firearms to facilitate the crew's drug trafficking activities, which fueled KDY's operations. The evidence further suggests the Defendant's involvement in violent acts on behalf of the crew.

### B.    Defendant's Conduct as a Drug Trafficker

KDY operated an open-air drug market in Northwest D.C., including three known drug points within its territory, namely: the 600 block of Kennedy Street NW; the 500 block of Kennedy Street NW; and the 5400 block of Georgia Avenue NW. For his part, the Defendant possessed at least two assault-style firearms, one of which was fully automatic, in connection with his drug trafficking. Further, the evidence suggests that the Defendant participated in multiple violent acts in connection with suspected crew-related beefs, or violent acts of opportunity that he committed with fellow KDY members. Indeed, as discussed *infra*, NIBIN[1] leads on firearms discovered in

---

[1] "NIBIN technology compares images of submitted ballistic evidence from shooting scenes and recovered firearms and produces a list of possible similar results. Trained NIBIN technicians then conduct a correlation review of these results, identifying NIBIN leads or potential links or associations from the same firearm. A NIBIN lead is an unconfirmed, potential association between two or more pieces of firearm ballistic evidence and is based on a correlation review of the digital images in the NIBIN database." *See* ATF Fact Sheet – National Integrated Ballistic Information Network, *available at* https://www.atf.gov/resource-center/fact-sheet/fact-sheet-national-integrated-

stash houses where the Defendant was found over the course suggest additional, uncharged acts of violence.

The parties' agreed-upon quantity of marijuana reasonably foreseeable to the Defendant stems, primarily, from two stash houses where the Defendant appeared to reside or otherwise frequent. On October 10, 2022, three firearms and substantial narcotics from the Brown family residence home at 2608 Southbridge Court in Bowie, Maryland— wherein the Defendant, along with his co-defendants Miasiah, Keion, and Khali Brown, maintained bedrooms. That day, law enforcement responded to the location upon receipt of a 911 emergency call for a shooting. They were further notified of a second call for a report of shots fired on Trotter Park Lane, adjacent to the backyard of 2608 Southbridge.

Although his co-defendants' mother denied to police that anyone had been shot at the location, law enforcement noticed multiple bullet holes in the living room window, pooled blood in the living room, scattered cartridge casings, as well as a blood trail on the front entryway of the residence. Officers ultimately obtained a residential search warrant and therein found bulk quantities of narcotics, U.S. currency, firearms, and firearms accessories.

---

ballistic-information-network.



Secreted within the walls of the basement sleeping quarters was a hardshell suitcase, containing various drum magazines, a pistol conversion kit to convert a handgun into a short barrel rifle, additional opioids, and a digital scale. In total, three firearms, as well as numerous live rounds of ammunition, firearms accessories, and large capacity magazines were recovered from the home.







Overall, throughout the residence, law enforcement found and seized nearly $47,000 in U.S. currency, 103 pounds of marijuana, including in luggage similar to luggage seized from other KDY co-conspirators during interdictions; 66.2 grams of crack cocaine; and an aggregate of 106.4 grams of oxycodone pills and 79.6 grams of methamphetamine pills. All seizures from the

residence on October 10, 2022, as well as the trademark hardshell suitcases containing bulk quantities of vacuum sealed marijuana that the Court has seen in various pleadings throughout this case, are depicted in the below images.

 



At the time of the search, the Defendant and his co-conspirators were conspicuously absent. Meanwhile, at 5:30 a.m., a drive-by shooting involving two suspect vehicles occurred in

rival crew territory in Northeast D.C., involving Victim-1. No one was hit by gunfire for this first shooting. But eleven minutes later, Victim-1's brother's residence in Takoma Park, Maryland was also shot at, resulting in non-fatal gunshot injuries to two individuals. And around 6:16 a.m., another drive-by shooting occurred in Southeast D.C. As detailed further *infra*, some of the firearms discharged at these shooting scenes were found three months later, on January 26, 2023, in yet another KDY stash house that the Defendant and his co-conspirators occupied.

On January 26, 2023, law enforcement performed an interdiction operation at Thurgood Marshall Airport ("BWI") where co-defendants Khali Brown, Herman Signou, and their associates were flying from Los Angeles with several pieces of checked luggage. Sure enough, upon their arrival, five pieces of their luggage were flagged, and therein, law enforcement found 86.5 pounds of marijuana packaged in vacuum-sealed bags. During the operation, Khali Brown and Herman Signou slipped past officers with two pieces of luggage. Unbeknownst to them, though, surveilling officers followed their vehicle to 1704 D Street NE and watched them enter the residence with the pieces of luggage.

Later that same day, upon securing a residential search warrant, law enforcement entered the residence. At the time law enforcement entered the residence, the Defendant was discovered, along with four co-defendants: Khali and Keion Brown, Tristan Ware, and Signou. Scattered throughout that same basement of the stash house, law enforcement found ten loaded firearms, two of which were machine guns. Four of those firearms were found in a suitcase resembling that which Khali Brown and Signou were observed entering the residence with earlier in the day (shown below), and which also contained bulk quantities of marijuana, 351 fentanyl-laced counterfeit oxycodone pills (approximately 39.4 grams), and 50 oxycodone pills.





The Defendant's DNA was included on two of the ten recovered firearms from 1704 D Street. One such firearm (depicted below) is a privately manufactured ("PMF") .223 caliber assault rifle equipped with an extended magazine (carrying 50 live rounds), scope sight, and modified to function as a fully-automatic weapon.



The second firearm bearing the Defendant's DNA profile (depicted below) was a Draco 7.62 x 39mm pistol, also equipped with an extended magazine. What's more, three black magazines containing 7.62 x 39mm cartridges were recovered in a closet, and a latent print lifted from the group of magazines was identified as the Defendant's.



Notably, the PMF converted into a machine gun with the Defendant's DNA is linked via NIBIN to two shootings on October 10, 2022 (the morning of the shooting at the Brown family residence)—one that occurred in Northeast, D.C. at approximately 5:30 a.m., and the other occurring in Southeast, D.C. approximately 45 minutes later. This PMF was further used in a shooting on December 9, 2022, on Kennedy Street. The other firearm linked via DNA to the Defendant, the Draco 7.62 x 39mm pistol, was similarly linked via NIBIN lead to a December 19, 2022 shooting in rival crew territory in Southeast, Washington, D.C., as well as a January 22, 2023 shooting in Southeast, D.C., *i.e.*, mere days before the firearm's recovery during the residential warrant execution at 1704 D Street.

### C.    Defendant's Post-Indictment Conduct

The indictment in this case was unsealed on June 27, 2023, when a majority (12 of 16 then-

named defendants)[2] were arrested as part of a coordinated takedown operation. The Defendant was publicly identified as a wanted individual in connection with this indictment on multiple media platforms, including the Metropolitan Police Department's and United States Marshals Service's social media feeds, by early-July 2023. *See*, *e.g.*, https://mpdc.dc.gov/release/indicted-suspects-sought; https://twitter.com/USMarshalsHQ/status/1713993696469750095. Despite such public proclamations of his pending charges, the Defendant did not turn himself into law enforcement's custody. Instead, the below communications between two of the fugitive co-defendants, Keion Brown (green text bubbles) and Juwan Clark (blue text bubbles) show that the Defendant, a/k/a "Choo" or "Chewy," and his two co-defendants knew of their fugitive status by at least early-September 2023, if not before.



[2] In addition to the Defendant, co-defendants Warren Fields, Keion Brown, and Juwan Clark were not apprehended as part of the coordinated arrest operation and were subsequently publicly identified as wanted persons. Fields turned himself into federal custody soon after being identified as a wanted individual; the Defendant and Keion Brown, as well as Clark, necessitated additional law enforcement efforts to secure their eventual apprehension.

From: +12026699026 Sq
To: +12027254812 (owner)

Aye I was thinking about it too slim go head get this shit over with

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +12027254812 | | 9/5/2023 5:52:46 PM(UTC+0) | |

Status: Read

9/5/2023 5:51:27 PM(UTC+0)

Source Info:
00008110-0009352C0EF3801E_files_partial-afu.zip/private/var/mobile/Library/SMS/sms.db : 0x124DA4F (Table: message, handle; Size: 38674432 bytes)



From: +12026699026 Sq
To: +12027254812 (owner)

Cause I'm really tired of living like this

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +12027254812 | | 9/5/2023 5:52:46 PM(UTC +0) | |

Status: Read

9/5/2023 5:52:19 PM(UTC+0)

Source Info:
00008110-0009352C0EF3801E_files_partial-afu.zip/private/var/mobile/Library/SMS/sms.db :
0x124D7DE (Table: message, handle; Size: 38674432 bytes)



From: +12027254812 (owner)
To: +12026699026 Sq

Nahfr we could do this shit together slim

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +12026699026 Sq | 9/5/2023 5:54:53 PM(UTC+0) | | |

Status: Sent

9/5/2023 5:54:52 PM(UTC+0)

Source Info:
00008110-0009352C0EF3801E_files_partial-afu.zip/private/var/mobile/Library/SMS/sms.db :
0x124D5A8 (Table: message, handle; Size: 38674432 bytes)

From: +12026699026 Sq
To: +12027254812 (owner)

When y'all want do y'all gotta lmk so I can make my way back

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +12027254812 | | 9/5/2023 5:55:38 PM(UTC+0 ) | |

Status: Read

9/5/2023 5:55:26 PM(UTC+0)

Source Info:

13



The Defendant did not, however, ultimately turn himself into federal custody. Instead, the Defendant, along with co-defendant Keion Brown, perpetrated multiple crimes of violence in the D.C. and Baltimore Metropolitan Areas before his eventual apprehension.

October 2023 Morgan State University Shooting

On October 3, 2023, at approximately 9:23 p.m., officers responded to a shooting at Morgan State University, where they found five gunshot victims who required hospitalization. In their investigation, law enforcement learned that, outside the university's cafeteria, one of the

suspects made hand signs and yelled at a group of individuals, resulting in a verbal altercation that escalated to two suspects retrieving firearms and shooting into a crowd of people, ultimately hitting the five victims, none of whom are believed to be the suspects' intended targets. Morgan State surveillance from immediately before the shooting depicts two persons of interest matching multiple witness' physical descriptions of the shooters. A BOLO was generated from this surveillance and circulated, whereupon a civilian witness to the shooting and D.C. police officers identified the Defendant and M.B., the then-juvenile brother to Khali, Keion, and Miasiah Brown. Pictures of both suspects in the university's cafeteria are displayed below, with the Defendant circled in red.



Maryland state authorities have since charged both the Defendant and M.B. with, among other offenses, attempted murder, and the case remains pending.

November 2023 Armed Robbery and Carjacking Spree

Count 51 of the Superseding Indictment stems from the Defendant's involvement in a violent crime spree with co-defendant Keion Brown on November 17, 2023, culminating in their arrest that same day. First, around 7:40 p.m. on November 17, 2023, the Defendant, Keion Brown, and at least one KDY associate, B.B., committed an armed carjacking at the 1800 block of Half Street SW. Using two sedans (hereafter, the "suspect vehicles") to arrive at the scene, four armed gunmen,[3] including the Defendant, demanded the victim's belongings, ultimately taking the victim's white Chevy Corvette with a Maryland tag, Tesla key with an attached Apple air tag, and Apple air pods.

Approximately one hour later, at 8:20 p.m., the same two suspect vehicles pulled up to three victims leaving a restaurant at 880 P Street NW. This time, three to six masked and armed suspects exited both suspect vehicles, pointed their guns at the three victims, and demanded the victims' belongings. Ultimately, the suspects took various items from the victims, including an iPhone 12, an iPhone 13, keys, a Burberry wallet, an Invicta watch, and a pair of shoes. That same evening, law enforcement tracked the Apple Air tag—stolen during the carjacking described *supra*—to the 4700 block of Benning Road SE. At that location, the stolen debit cards and wallet belonging to the robbery victims were strewn in the grass adjacent to the building at 4752 Benning Road SE.

Upon approaching the building, law enforcement saw through a window the Defendant and another male who, upon making eye contact with the officers, fled from the first floor towards the

---

[3] The suspect vehicles appear to be occupied by other suspects beyond the four armed gunmen who exited both vehicles and approached the victim.

laundry room area of the building. Officers did not see any other individuals within the building. Upon accessing the lock-out building approximately five minutes later, officers immediately entered the laundry room, where they found the Defendant, Keion Brown, and B.B. Inside the washing machine in the same laundry room, law enforcement found a bag of ammunition within a backpack along with a jacket. Inside the jacket, law enforcement found a loaded PMF. Also in the washing machine was a Tesla key card consistent with the one stolen from the carjacking victim.

As law enforcement continued to search the laundry room occupied by the Defendant and his co-conspirators, they found three concealed firearms in a hole in the ceiling—one FNH 5.7x28 firearm, bearing serial number 386309333; one black Glock 19 with an obliterated serial number; and one black pistol with serial number BBUU283 and a conversion device, rendering it a fully automatic machine gun. Of the firearms and magazines that contained DNA profiles that were suitable for comparison, the Defendant's DNA profile was found on one of the Glock magazines recovered from the laundry room's dryer. The Defendant was arrested that day and detained in the instant matter.

## II.    LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available; the Sentencing Guidelines; any

pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
   a) To reflect the serious of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b) To afford adequate deterrence to criminal conduct;
   c) To protect the public from further crimes of the defendant; and
   d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
   a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      i) Issued by the Sentencing Commission . . . ; and
      ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
   a) Issued by the Sentencing Commission . . . and
   b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

## III.    GUIDELINES CALCULATION

As the Final Presentence Report (ECF No. 432; hereafter, the "PSR") correctly notes, the Defendant's Criminal History Category is I. The Government agrees that the PSR captures the parties' plea agreement that the Defendant entered on September 5, 2024. *See* ECF No. 357.

The Government also agrees that the applicable guidelines sentence for Count One of the superseding indictment, after acceptance of responsibility and including a 2-level enhancement for the possession of a firearm in connection with the offense, is 46-57 months, with a mandatory minimum of 60 months imprisonment required by statute.

The applicable sentencing guidelines sentence for Count 51 of the superseding indictment is the mandatory minimum required by statute under 22 D.C. Code § 2803(b)(2), 15 years imprisonment. Chapter 6, Section 6.1(a), Note 1[4] of D.C. Sentencing Guidelines provides that "one crime of violence per victim per event <u>must</u> be sentenced consecutively to other counts." (emphasis in original). Consistent with the parameters of 18 U.S.C. §§ 3582 and 3584, the Court maintains discretion to impose the sentences as to Counts 1 and 51 concurrently or consecutively, in whole or in part, within the agreed upon aggregate range of 180-240 months accepted by the Court on September 5, 2024. In the plea agreement, the parties agreed that a sentence within the aggregate Estimated Guidelines Range would constitute a reasonable sentence considering all the factors set forth in 18 U.S.C. § 3553(a). *See* ECF No. 357, ¶ 6. The parties further agreed that the Defendant is entitled to argue that the sentences for Counts 1 and 51 be imposed concurrently, in full, and

---

[4] The plea agreement cites to Section 6.1 of Chapter 6 of the D.C. Sentencing Guidelines, which governs the imposition of consecutive sentences. ECF No. 357, at 4. The 2025 D.C. Sentencing Guidelines have since been published, which now provides the relevant guidance for the imposition of consecutive sentences in Section 7.1 of Chapter 7 of the 2025 Edition of the D.C. Sentencing Guidelines. The 2025 D.C. Sentencing Guidelines Manual provides that it is effective for all pleas after April 1, 2025, however.

that the Government would request that the sentences for Counts 1 and 51 be imposed consecutively, in full. *Id.*, ¶¶ 5(A), (D).

## IV.    ARGUMENT

The United States recommends that the Court sentence the Defendant to a term of 240 months' incarceration, to be followed by a period of five years of supervised release, given the nature and seriousness of his offense; his history and characteristics; and the need for the sentence imposed to satisfy the statutory requirements set forth in Sections 3553(a)(2)(A)-(D).

### 1.    The Nature, Circumstances, and Seriousness of the Offense

Of the seventeen defendants charged in this indictment, the Defendant, through his conduct, has displayed perhaps the greatest proclivity for violence. The nature of his conduct is captured, in part, by his second count of conviction, but bears further elucidation.

As an initial matter, the Defendant participated in the Kennedy Street Crew's drug trafficking operation over the duration of the charged multi-year conspiracy. With the assistance of the Defendant and other co-conspirators, KDY commandeered an entire portion of a local community in D.C. and therein established an open-air drug market. As the Court is well aware, drug trafficking alone is destructive to communities. And when drugs are trafficked in the open, brazen manner as they were in this conspiracy, such drug trafficking further provokes violence, both domestic and drug-rival related, particularly when trafficked as an inherent part of a violent crew's operations. The crew's expansion in both territory and power coincided with the Kennedy Street Corridor becoming the scene of violence, which invariably stemmed from the confluence of drug trafficking and firearms in addition to rivalries stoked by the crew. These offenses and the collateral consequences to the community are extremely serious in nature, and the Defendant's sentence should reflect this reality.

The violence begot by drug trafficking is not merely hypothetical in the Defendant's case. Guns bearing his DNA profile found at stash houses over the course of the conspiracy have been linked to multiple shootings, including incidents that occurred on the same day as shootings at the Defendant's residence.

It also bears emphasizing that the Defendant perpetrated a series of crimes, including one count of conviction in this case, while he knew he was a fugitive. On October 1, 2023, a drive-by shooting occurred in the 2700 block of Pennsylvania Avenue SE. Victim 1 reported to law enforcement that as they were driving eastbound on Pennsylvania Avenue, a black car pulled up alongside them. Victim 1 described both the passenger and driver as wearing ski masks. The black car proceeded to aggressively pursue Victim 1's car, and as both vehicles crossed Minnesota Avenue, shots were fired from the black car, prompting Victim 1 to make a sharp right turn onto the 1500 block of 27th Street SE. Victim 1 then crashed their vehicle into two other occupied vehicles. Victim 2, who was walking down the street at the time, heard gunshots and was struck by a bullet. Cartridge casings from the October 1, 2023 shooting scene were collected and entered into the NIBIN database, which revealed a potential link between those casings and cartridge casings recovered at the scene of the October 3, 2023 shooting at Morgan State University. Given that the two shootings occurred within close temporal proximity and that NIBIN suggests the same firearm was used in both shootings, it is reasonable to infer that the same suspects and/or their associates were involved in both shootings.

Then, a month later, the Defendant participated in an armed carjacking and robbery spree throughout the District, during which multiple citizens were robbed at gunpoint. Indeed, the Defendant's violent conduct has continued even since his arrest. Mere weeks before his sentencing,

on March 28, 2025, the Defendant was involved in an incident in D.C. Jail where he stabbed another inmate with a shank as part of a suspected crew-related incident.[5]

Finally, in addition to the brazen, repeated acts of violence linked to the Defendant, he also necessitated additional efforts from both state and federal law enforcement to eventually effectuate his arrest. This Circuit has found that a defendant's fugitive status for an extended period, coupled with committing additional crimes and necessitating law enforcement efforts to effectuate his arrest, constitutes grounds to not only withhold the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b), but also merit a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. *See United States v. Reeves*, 586 F.3d 20, 24-25 (D.C. Cir. 2009). The Government is neither pursuing an obstruction sentencing enhancement in the Defendant's matter, nor does it seek to withhold full acceptance of responsibility credit. The Defendant's post-indictment conduct, nevertheless, constitutes an aggravating factor under § 3553(a) that justifies the Government's request for a sentence at the top of the parties' agreed sentencing range.

## 2.    The Defendant's History and Characteristics

To his credit, the present case will be the Defendant's first felony conviction. However, the Court should also consider his clear membership in a crew, which amplifies the dangerousness his criminal behavior poses to the community. Indeed, his staunch KDY membership is corroborated by his presence in numerous music videos with other members—including co-defendants Khali Brown and Ware—such as the aptly named, "Shooting and Driving" music video.[6]  In this music video (screenshots below), Khali Brown, a/k/a "Migo Lee" boasts having a team of shooters who are "young and violent" as the Defendant stands beside him and makes hand

---

[5] This incident is currently under investigation.
[6] Available at https://www.youtube.com/watch?v=IZoSUNX8rh8.

signs signifying provocations directed at rival crews in D.C.



Migo Lee – Shooting & Driving | Prod. @Forestmilan (Official Music Video)



Migo Lee – Shooting & Driving | Prod. @Forestmilan (Official Music Video)

Indeed, in other music videos featuring KDY members (co-defendant Ware is to the Defendant's left in the music video excerpt displayed below), the Defendant leaves no doubt, through his hand gestures, of the message he intends to convey:



As corroborated by the aforementioned evidence, including the seizures of numerous firearms and contraband as well as the NIBIN leads connecting these firearms to real shootings, including multiple drive-by shootings, it appears that for the Defendant and his co-conspirators, art may imitate life.

### 3.    The Need to Promote Respect for the Law and Deterrence

The Defendant's sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). Perhaps more than any other factor, the need to deter the combination of drug trafficking, firearms possession, and the ensuing violence on behalf of a dangerous crew weighs most heavily in favor of the recommended sentence.

The United States is particularly troubled by the Defendant's apparent disregard for the gravity of his conduct. In short: the Defendant was publicly identified as a wanted individual in connection with a then-16-person federal indictment in July 2023. Based upon text messages, he

was aware of this status no later than late-Summer 2023. In October 2023, he was involved in a shooting on a college campus that triggered significant additional publicity and law enforcement from yet another jurisdiction seeking his arrest. *See, e.g.*, https://apnews.com/article/morgan-state-shooting-victims-unintended-targets-d3e847322bf556088a2110a89566c317. Then, a month later, he and his fellow fugitive and crew member perpetrated an armed carjacking and robbery spree in the District.

A prison sentence at the top end of the parties' agreed sentencing, *i.e.*, 240 months, provides the best, and likely only, measure of deterrence available to the Court. Such a sentence accomplishes the aims of § 3553(a)(2) in both a general and particularized manner. As applied to the Defendant, such a sentence reflects both the seriousness and dangerousness of the Defendant's conduct in this case, including his post-plea conduct. With respect to general deterrence, such a sentence promotes respect for the law and the safety of the community by serving as a deterrent to crew-affiliated criminal conduct such as that perpetrated by the Defendant and his co-conspirators.

Perhaps more than any other factor, the need to deter unlawful firearms possession and the use thereof, particularly by someone engaged in drug trafficking on behalf of a dangerous crew, weighs most heavily in favor of a severe sentence. As the Court is well aware, drug trafficking is an inherently dangerous business, and this danger is even more pronounced when conducted in an open-air drug market, as was the case in this conspiracy. This type of brazen drug trafficking is a magnet for violence, as is borne out by the gun violence statistics associated with the Kennedy Street Crew's ongoing crew beefs. Indeed, forensic evidence developed in this case suggests that, *in addition to* the above-described acts of violence, the Defendant possessed firearms, including automatic weapons, that were used in separate shootings. The need to deter violence associated with drug trafficking, particularly by someone who not only participates in KDY's drug

25

trafficking, but possesses firearms in furtherance of this conduct, justifies the serious sentence requested. To this end, the District has struggled with mounting gun violence on the heels of a homicide rate that peaked in 2023, yet remained high in 2024. *See* Emily Davies, Jenny Gathright, and Peter Hermann, *D.C. Homicides: Tracking the District's Violent Crime in 2024* WASH POST (Jan. 7, 2025),  https://www.washingtonpost.com/dc-md-va/2024/dc-homicide-tracker/.

This context weighs in favor of a robust sentence as the best measure of deterrence available to the Court. A sentence of 240 months' imprisonment accomplishes the aims of § 3553(a)(2) in both a general and particularized manner. As applied to the Defendant, such a sentence reflects the gravity of his conduct in this case. With respect to general deterrence, such a sentence promotes respect for the law and the safety of the community by serving as a deterrent to crew-affiliated criminal conduct, particularly involving firearms and controlled substances.

### 4.    Other Factors

The Government's recommended sentence is also justified to give the Defendant ample time to pursue further educational and vocational training and participate in other programs, including mental health treatment to hopefully address issues that have impacted his youth and development. *See*, *e.g.*, PSR, ¶¶ 120-21, 135. The United States' recommended sentence is also justified to protect the public from the Defendant, who has perpetrated multiple acts of crew-related violence on the community. During this period of incarceration, the Defendant has potential to reroute himself to a path of productivity, growth and healing.

## V.    CONCLUSION

For the foregoing reasons, the Government recommends that the Court sentence the Defendant to 240 months of imprisonment, to be followed by five years of supervised release. The over the course of his participation in KDY's drug trafficking conspiracy, the Defendant was linked to multiple stash houses containing stockpiles of firearms and their accessories. Then, after

the Defendant was publicly identified as a wanted individual, rather than turn himself into authorities, he instead perpetrated multiple crimes of violence both in the District and in neighboring jurisdictions. Through his actions, the Defendant has exhibited his proclivity for violence. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

<div style="margin-left:40%">

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. Bar No. 481052

</div>

By:    */s/ Sitara Witanachchi*
          SITARA WITANACHCHI
          MATTHEW W. KINSKEY
          D.C. Bar No. 1023007 (Witanachchi)
          D.C. Bar No. 1031975 (Kinskey)
          Assistant United States Attorneys
          U.S. Attorney's Office
          Violence Reduction & Trafficking Offenses
          601 D Street, NW
          Washington, D.C. 20530

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2025, a copy of the United States' Sentencing Memorandum was submitted via CM/ECF, which will transmit to Elita Amato, Esq., counsel for Defendant Jovan Williams.

<div align="right">

<u>/s/ Matthew W. Kinskey</u>
Matthew W. Kinskey
Assistant U.S. Attorney

</div>